UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRANCISCO ZEPEDA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:22-cv-03040-GCS |
| | ) |
| VIPIN SHAH and | ) |
| SARAH STOVER, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff, an inmate of the Illinois Department of Corrections ("IDOC"), brings the underlying civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while incarcerated at Lawrence Correctional Center ("Lawrence"). (Doc. 1).[1] Now before the Court is a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies and Memorandum of Law in Support by Defendants Dr. Vipin Shah and Sarah Stover. (Doc. 31, 32). Plaintiff filed a Response and supplemental exhibit. (Doc. 38, 39). Defendants filed a Reply. (Doc. 40). For the reasons delineated below, Defendant's Motion for Summary Judgment is **DENIED**. (Doc. 31).

---

[1]   Plaintiff, at all times relevant, was incarcerated at Lawrence Correctional Center. Plaintiff was then transferred to Pinckneyville Correctional Center. (Doc. 1). On January 13, 2025, Plaintiff notified the Court that he is currently incarcerated at Centralia Correctional Center. (Doc. 43).

## PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on December 12, 2022, related to medical care Plaintiff received from October 18, 2018, to June 18, 2021, for ongoing ear-related medical issues, including pain, hearing loss, and bleeding. (Doc. 1, p. 3-5). The Complaint alleges that Plaintiff submitted requests for medical screenings on October 18, 2018, December 30, 2018, February 8, 2019, April 1, 2019, May 15, 2019, June 25, 2019, May 27, 2020, and June 15, 2020. *Id*. Following these requests, Plaintiff claims that he received inadequate medical consultations and treatment from various providers, including Defendants Shah and Stover. *Id*. Specifically, Plaintiff alleges that on November 27, 2018, Shah ignored Plaintiff's complaints of ear pain and difficult hearing because Plaintiff's appointment was in regard to blood pressure, not ear problems. *Id.* at p. 2. Plaintiff also alleges that he saw Stover on August 15, 2019, and June 22, 2020, where she found an infection in Plaintiff's ears and prescribed antibiotics and ear drops. *Id.* at p. 3. Plaintiff argues Defendants failed to adequately address his ear issues at those appointments, and he also experienced a delay in receiving necessary hearing aids. *Id*. Due to the inadequate medical treatment he received, Plaintiff alleges he filed grievances on July 15, 2019, August 9, 2019, and January 1, 2021. *Id*.

On August 4, 2023, the Court conducted its preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 11). The Court allowed Plaintiff to proceed on the following claim:

> Claim 1: Eighth Amendment deliberate indifference claim against Defendants Dr. Shah, and Stover for their handling of Plaintiff's ear problems.

(Doc. 11, p. 4). [2]

## FACTUAL BACKGROUND

Plaintiff's grievance records, obtained from the Administrative Review Board ("ARB") contain a total of 123 pages, while his records from Pinckneyville Correctional Center contain a total of 138 pages.[3] (Doc. 32, p. 2). In response to Defendants' subpoena, the ARB produced Plaintiff's grievance records from January 1, 2018, to the date of issuance. (Doc. 32, Exh. A). According to Plaintiff's grievance records, Plaintiff submitted a total of zero (0) grievances at Lawrence in 2018 and zero (0) grievance records in 2019. (Doc. 32, Exh. A, B.) Plaintiff's first recorded grievance was filed on July 30, 2020.

Defendants have identified three (3) grievances, namely Grievance Nos. 08-20-001, 01-21-036, 01-21-296, which articulate complaints related to Plaintiff's medical issues involving his ears. (Doc. 32, p. 3-4). Plaintiff's Response, however, fails to identify a specific grievance supporting his claims. (Doc. 38).[4] Instead, Plaintiff submits 149 pages

---

[2]   The Court dismissed Plaintiff's claims as to Rob Jeffreys, Dee Dee Brookhart, and Lori Cunningham. (Doc. 11, p. 8-9).

[3]   Defendants' Motion notes that Plaintiff was transferred from Lawrence to Pinckneyville, which resulted in Plaintiff's grievance records being transferred to Pinckneyville as well. (Doc. 32, p. 4). For the sake of clarity, the Court will refer to Plaintiff's grievance records as to the Lawrence facility as the "Lawrence Records."

[4]   Plaintiff later submitted Exhibit C, which was originally omitted from his Response. (Doc. 39). This exhibit includes Wexford's Provider Handbook, comprising twenty-four (24) pages, excluding the cover page. *Id*.

of exhibits, which include Grievance No. 01-21-036 and a rejected grievance, No. 2581-09-22.[5]

### A.     Grievance No. 08-20-001

Plaintiff submitted his first relevant grievance, Grievance No. 08-20-001, on July 30, 2020. (Doc. 32, Exh. A, p. 97-98). This grievance primarily concerns Plaintiff's unfulfilled request for a CPAP machine and sleep study to treat his sleep apnea. *Id.* at p. 97-98. Plaintiff describes his conversations with non-party, Dr. Pittman, regarding these requests. *Id.*

Beyond sleep apnea issues, Plaintiff alleges that, since his arrival at Lawrence, he has had "several medical issues and treatments" that have been ignored, including delayed medications and lack of access to healthcare despite ongoing ear bleeding over a period of months. (Doc. 32, Exh. A, p. 97-98). He claims this lack of care led to hearing loss and ear damage, as evidenced by blood leakage. *Id.* Plaintiff further states that, after being evaluated by an "audiologist on 6/25/20" where "it was determined that [Plaintiff] has hearing loss[,]" he was recommended hearing aids, which he had yet to receive. *Id.* He also stated that his "blood pressure [was] being allowed to stay in the stroke range." *Id.*

On August 5, 2020, Grievance No. 08-20-001 was classified as an emergency and granted expedited review. (Doc. 32, Exh. A, p. 100). On August 13, 2020, healthcare unit

---

[5]     Plaintiff's exhibits include, without explanation or specific reference, amongst other documents, a mixture of the grievances listed, as well as handbooks, unrelated case information for cases not before this Court, counseling summaries, patient notes, communication plans. Defendants' Motion, as mentioned previously, however, is for summary judgment on the basis that Plaintiff did not exhaust administrative remedies prior to filing the Complaint. (Doc. 32).

administrator Cunningham reviewed Plaintiff's medical chart and recommended that Plaintiff consult an "ENT to discuss audiology report 6/25/2020." *Id*. at p. 96. On August 24, 2020, the reviewing grievance officer recommended the grievance be deemed moot considering Plaintiff was to be seen by an "ENT" to discuss the audiology report. *Id*. at p. 110. On August 31, 2020, the Chief Administrative Officer ("CAO") concurred with the grievance officer's recommendation. Plaintiff subsequently appealed to the ARB. *Id*. at p. 96.

On September 8, 2020, Plaintiff submitted a "[Rebuttal] to [Grievance] Counselor's Recommendations and Findings" in response to the grievance officer's decision regarding Grievance No. 08-20-001. (Doc. 32, Exh. A, p. 112). These materials were included in Plaintiff's appeal to the ARB. (Doc. 32, p. 3).

In his letter, Plaintiff reiterated his sleep apnea diagnosis and continued efforts to obtain a CPAP machine. (Doc. 32, Exh. A, p. 112). He specifically named Dr. Shah, but only in connection with his difficulty obtaining the CPAP: "[t]he current Doctor, Shah, told me I needed my sleep study from my family physician to get my CPAP." *Id*. Plaintiff asserted that he signed three medical release forms to obtain his previous sleep study but still faced delays and difficulties in receiving treatment. *Id.* He further expressed concerns about potential fluid buildup due to the lack of treatment. *Id*.

Plaintiff's letter also alleged instances of "medical neglect" which Plaintiff believed to be deliberate. (Doc. 32, Exh. A, p. 112). He referenced an October 2018 incident where he sought treatment for a possible ear infection accompanied by blood leaking from his ears, though he did not identify any specific medical provider. *Id.* Plaintiff

claimed it took over six months to obtain a consultation and that, over two years, he suffered from three ear infections despite having no prior history of such issues before arriving at Lawrence. *Id.* The letter further alleges that when Plaintiff was eventually evaluated by an audiologist—on an unspecified date after two years of requests—he was diagnosed with mild hearing loss, likely due to untreated ear infections. (Doc. 32, Exh. A, p. 112). He concluded his letter by requesting proper medical care. *Id.*

The ARB subsequently received Plaintiff's appeal on September 14, 2020. (Doc. 32, Exh. A, p. 95). The ARB denied Grievance No. 8-20-001 on March 24, 2021. *Id.* The decision marked the Grievance as related to "sleep study, hearing loss" and found that "the issue was appropriately addressed by the facility Administration." (Doc. 32, Exh. A, p. 95).

**B.    Grievance No. 01-21-036**

On January 1, 2021, Plaintiff submitted Grievance No. 01-21-036, citing an incident from May 22, 2020, in which he claimed he submitted a request slip to healthcare reporting ear pain, bleeding, and difficulty hearing. (Doc. 32, Exh. A, p. 122). He stated that he requested a hearing test but received no immediate response. *Id.*

That Grievance also alleged that on May 23, 2020, Plaintiff was treated for an ear infection over a three-day period. (Doc. 32, Exh. A, p. 122). He claimed that he was later seen by an audiologist on June 25, 2020, who diagnosed him with hearing loss due to a severe infection and recommended hearing aids. *Id.* at p. 122-123. Plaintiff stated that he was referred to an ear, nose, and throat ("ENT") specialist for further evaluation before receiving the hearing aids, but he did not see the specialist until October 28, 2020. *Id.*

Despite requesting hearing aids again on November 23, 2020, Plaintiff stated that, as of the date of his grievance, he still had not received them. *Id.*

The reviewing grievance officer received Plaintiff's grievance on January 8, 2021, and reviewed it on January 15, 2021. (Doc. 32, Exh. A, p. 122). The reviewing grievance officer deemed Plaintiff's grievance moot given Plaintiff's hearing aid fitting was "in the process of being scheduled." *Id.* at p. 121. The CAO agreed with the grievance officer's determination on January 16, 2021. *Id.* The ARB subsequently received Plaintiff's grievance on January 22, 2021, and determined the grievance be likewise deemed moot. *Id.* at p. 118.

C.   **Grievance No. 01-21-296**

On January 18, 2021, Plaintiff submitted Grievance No. 01-21-296 regarding concerns about dry sinuses and treatment by Nurse Practitioner Luking. (Doc. 32, Exh. A, p. 116). Plaintiff's grievance was received by the reviewing grievance officer on January 22, 2021. The reviewing grievance officer received the grievance on January 22, 2021, and deemed it moot, noting that Plaintiff had already been seen and treated by a medical doctor on the same day. *Id.* at p. 115. The Chief Administrative Officer (CAO) concurred, and the ARB, upon receiving the grievance on March 12, 2021, upheld the mootness determination. *Id.* at p. 118.

On March 18, 2021, the ARB provided written response to Grievance No. 01-21-296, dated January 18, 2021, which was based on medical treatment for sinus related issues on November 27, 2020, December 15, 2020, December 24, 2020, January 9, 2021, and January 12, 2021. (Doc. 32, Exh. A, p. 114). The grievance was denied on the basis that

"actual treatment / medications ordered is not within the jurisdiction of" the ARB "and must be ordered by the attending physicians." *Id.*

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, in determining the outcome on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but instead is to determine whether a genuine issue of material fact exists. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies "are not required to be decided by a jury but are to be determined by the judge." 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is up to the Court to evaluate whether a prisoner has exhausted his or her administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines that a prisoner did not exhaust administrative remedies, the Plaintiff is given the opportunity to exhaust should time still permit or if the failure

to exhaust was innocent.⁶ *Id*. at 742. Alternatively, if the Court determines that the failure to exhaust was the prisoner's fault, the case is over. *Id*.

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). This comports with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); s*ee also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). Additionally, it affords prison administrations an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo*, 286 F.3d at 1023. As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance

---

⁶     *Pavey* provides that an "innocent" failure to exhaust includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Further, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed thwarted, and the inmate will be allowed to proceed with the lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (indicating that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Nor may a prisoner file a lawsuit while the prisoner is simultaneously proceeding through the required grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a Counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the prisoner must provide: "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint."[7] 20 ILL. ADMIN. CODE § 504.810(a). Should the prisoner not be satisfied with the Counselor's response, the prisoner can then submit a formal grievance to the prison's Grievance Officer. *Id*. at (a)-(b). The Grievance

---

[7]     This does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible. *See* 20 ILL. ADMIN. CODE § 504.810(a).

Officer must review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of receipt of the grievance, when reasonably feasible under the circumstances, the Grievance Officer must report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* ILL. ADMIN. CODE § 504.830(e). The CAO shall review the findings and recommendations from the Grievance Officer and advise the inmate of his or her decision in writing. *Id*. If the prisoner is not satisfied with the CAO's decision, the prisoner can then formally appeal to the Director through the ARB within 30 days of the CAO's decision. *See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the Grievance Officer's report and the CAO's decision to the appeal. *Id*. The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)–(e).

A separate procedure exists for emergency grievances. Inmates may file emergency grievances directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being handled on an emergency basis. *Id*. If the CAO classifies the grievance as an emergency grievance, the CAO shall "expedite the process of the grievance and respond to the offender indicating what action shall be or has been taken." *See* 20 ILL. ADMIN. CODE § 504.840(b). The inmate will also be informed by the CAO if it is determined that the grievance is non-emergent. *See* 20 ILL. ADMIN. CODE § 504.840(c). In such a case, notification will be made in writing that the inmate should "resubmit the grievance as non-emergent, in accordance with the

standard grievance process." *Id.* When an inmate appeals a grievance that has been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

Lastly, there are certain circumstances where a prisoner may exhaust his or her administrative remedies by filing a grievance directly with the ARB. *See* 20 ILL. ADMIN. CODE § 504.870. Those circumstances include grievances addressing: (1) placement in protective custody; (2) involuntary administration of psychotropic medication; (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and (4) all other issues, with the exception of personal property issues, that occurred at a previous institution." *Id.* The ARB "shall review and process . . . [such] grievance[s] in accordance with Section 504.850." *Id.*

## DISCUSSION

Defendants argue that Plaintiff failed to exhaust his administrative remedies as required by the PLRA because his grievances fail to identify Defendants Shah or Stover and were filed outside of the 60-day window.[8] (Doc. 32, p. 10-11). Ultimately, the Court finds these arguments unpersuasive because Plaintiff's grievances were resolved on the merits and are thus considered exhausted.

Plaintiff's case presents issues similar to those in *Maddox v. Love*, 655 F.3d 709 (7th Cir. 2011). In that case, the Seventh Circuit held that an inmate's failure to name or

---

[8]   20 ILL. ADMIN. CODE § 504.810(c) requires grievances contain "factual details... including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint."

describe the defendants, a prison chaplain and prison wardens, in his grievance concerning denial of religious fellowship did not bar his claim where prison administrators resolved his grievance on the merits and did not reject it for procedural deficiencies. *See* 655 F.3d at 722. The Seventh Circuit explained that the PLRA's exhaustion requirement is designed to provide prison officials an opportunity to address inmate complaints internally, rather than serve as a procedural trap that bars meritorious claims. *Id.* When prison officials review a grievance on the merits rather than rejecting it for procedural defects, the Seventh Circuit held that the grievance has fulfilled its purpose under the PLRA, such that defendants cannot later argue non-exhaustion. *Id.* Furthermore, the *Maddox* Court reasoned that a grievance need only provide enough information to allow prison officials to investigate the issue, even if a specific defendant is not explicitly named in the original grievance. *Id.*

Here, the Court finds that Plaintiff's Grievances "serve[d their] function of alerting the state and inviting corrective action." *Maddox*, 655 F.3d at 722.[9] In Grievance No. 08-20-001, Plaintiff complained of months-long "ongoing ear bleeding" and insufficient medical treatment, which resulted in hearing loss and ear damage. (Doc. 32, Exh. A, p. 97-98). Additionally, in his "Rebuttal" letter, Plaintiff complained that in October 2018 he sought treatment for a possible ear infection and blood leaking from his ears, but did not

---

[9] Grievance No. 01-21-296, in which Plaintiff complained of dry sinuses, nose bleeds, dry skin, and treatment provided by non-party Luking, does not appear to grieve Plaintiff's ear issues as identified in the Complaint. (Doc. 32, Exh. A, p. 114-117). As the Court finds that Plaintiff exhausted his administrative remedies based on Grievances Nos. 08-20-001 and 01-21-036, it declines to address this otherwise unrelated Grievance.

receive a consultation for over six months and suffered from three ear infections during the two years that followed. *Id.* at p. 112. Similarly, Grievance No. 01-21-036 complained that the lack of care Plaintiff received for his ongoing ear bleeding claims led to hearing loss and ear damage. *Id.* at p. 97-98. Plaintiff claimed that, after being identified by an "audiologist on 6/25/20," "it was determined that [Plaintiff] has hearing loss" and likely needed hearing aids. *Id.*

Based on the information provided in these grievances, the Court cannot say that the prison was prevented from fairly addressing Plaintiff's complaints. Not naming defendants in a grievance itself is " 'a mere technical defect' where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond."*Saffold v. Illinois Department of Corrections*, No. 18 C 3301, 2021 WL 4477930, at *7 (N.D. Ill. Sept. 30, 2021) (quoting *Maddox*, 655 F.3d at 722). Plaintiff's grievances and his Rebuttal letter identify treatment he received for his ongoing ear issues beginning in October 2018 that persisted into June 2020. (Doc. 32, Exh. A, p. 97-98, 112). Shah and Stover, who allegedly saw Plaintiff for ear issues in November 2018, August 2019, and June 2020, could potentially be identified based on the aggrieved time frame and conduct.

Nevertheless, the Court ultimately need not determine whether Plaintiff's grievances lacked information or were untimely because it is too late for Defendants to raise the issue of exhaustion now. Like in *Maddox*, Plaintiff's grievances were reviewed on the merits at every level of administrative review, and no procedural deficiencies were cited as a reason for denial. (Doc. 32, Exh. A, p. 95, 118).This alone is sufficient to rebut Defendants' argument that Plaintiff failed to exhaust. *See, e.g.*, *Maddox*, 655 F.3d at 722

(explaining that "[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense.") (citing *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004); *Ford*, 362 F.3d at 398). Accordingly, the Court finds Plaintiff has exhausted his administrative remedies.

## Conclusion

For the reasons outlined about the Court **DENIES** Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 31).

**IT IS SO ORDERED.**

**DATED: March 31, 2025.**

Gilbert C Sison
Digitally signed by Gilbert C Sison
Date: 2025.03.31 17:09:10 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**